IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-10956
_____

DONALD TODD,

Plaintiff-Appellant,

v.

KATHLEEN HAWK, Director,
Bureau of Prisons, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:93 CV 662 Y)
_____

(August 2, 1995)

Before REYNALDO G. GARZA, KING and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

Donald Todd appeals the district court's dismissal of his civil rights suit on grounds of qualified immunity. We reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

On September 30, 1993, Todd, a federal prisoner incarcerated in Texas, filed a complaint alleging violation of his civil rights by various Bureau of Prison officials. On November 19, 1993, the district court issued an Order to Show Cause, which instructed Todd to file an amended complaint setting forth greater factual detail or it would dismiss Todd's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On December 16, 1993, Todd filed an amended complaint seeking damages and injunctive relief against numerous prison officials who, "with [] knowledge and consent," did "purposefully racially discriminate against all Afro-American inmates by the manufacturing, circulating, and displaying of a racially [discriminatory] United States Government Memorandum, which lists as its subject matter `Juneteenth Celebration'."[1] Todd further alleged that this memorandum "appeared to be an official memorandum of the staff of the institution addressed to all inmates" because it was printed on an official government form and it was "widely circulated amongst the inmate[s] . . . and posted on official bulletin boards . . . ." Todd's amended

---

[1] Juneteenth is a date in Texas history which commemorates the day when slaves in Texas learned of the Emancipation Proclamation which granted their freedom.

complaint sought relief pursuant to 42 U.S.C. §§ 1986,[2] 2000d,[3] and 2000e-5.[4]

On January 4, 1994, the defendants filed a motion to dismiss Todd's complaint on grounds that they were entitled to qualified immunity, that Todd had failed to exhaust available

---

[2] Section 1986 provides in relevant part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986.

Section 1985 creates a private right of action to recover damages against those who conspire to: (1) prevent a federal officer from performing his duties; (2) intimidate a party, witness, or juror in a federal court; or (3) deprive any person, directly or indirectly, of the equal protection of the laws. See 42 U.S.C. § 1985.

[3] Section 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

[4] Section 2000e-5 provides a procedure for the enforcement of unlawful employment practices which are enumerated in 42 U.S.C. § 2000e-2. In order to bring an employment discrimination suit pursuant to 42 U.S.C. § 2000e-2, a plaintiff must first have exhausted the administrative remedies as set forth in § 2000e-5. The parties do not dispute that Todd failed to pursue available administrative remedies prior to instituting this suit.

administrative remedies, and that parties without personal involvement could not be held liable under the doctrine of respondeat superior. On June 15, 1994, the district court issued an order granting the defendants' motion to dismiss Todd's state tort and § 2000e-5 employment discrimination claims without prejudice for failure to exhaust administrative remedies, and also dismissed his claims under 42 U.S.C. §§ 1986 and 2000d for failure to state a claim upon which relief could be granted. FED. R. CIV. P. 12(b)(6). However, the court determined that Todd had stated cognizable Bivens[5] claims under the Equal Protection Clause as well as 42 U.S.C. § 1981.[6] On June 30, 1994, the defendants filed an answer to Todd's amended complaint in which they asserted the affirmative defense of qualified immunity to all of Todd's claims.

On July 13, 1994, based on its partial denial of the defendants' motion to dismiss, the district court struck part of the defendants' answer, including the affirmative defense of qualified immunity. On August 11, 1994, the defendants filed an interlocutory appeal challenging the district court's implicit denial of their qualified immunity defense due to the district court's determination that Todd had stated viable causes of action pursuant to the Equal Protection Clause and § 1981. On

_____

[5] See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[6] Section 1981 states in relevant part that all persons, regardless of race, "shall be subject to like punishment, pains, [and] penalties . . . of every kind . . . ." 42 U.S.C. § 1981(a).

4

August 19, 1994, the district court denied Todd's motion to add certain individuals as defendants on grounds that the addition of defendants would be futile given Todd's failure to state a cognizable equal protection claim under this court's heightened pleading standard.

On September 2, 1994, the defendants filed a "Motion for Indicative Ruling" in the district court, asking the district court to indicate how it would resolve the qualified immunity question if this court should remand for consideration thereof. See Lairsey v. Advance Abrasives Co., 542 F.2d 928, 932 (5th Cir. 1976) (stating that although district court no longer has jurisdiction to entertain a Rule 60(b) motion once a notice of appeal has been filed, the district court can indicate that it would be "inclined to grant the motion . . . and the movant can then apply to the appellate court for remand to the trial court to enter its order."). On September 7, 1994, the district court granted the motion for an indicative ruling and stated that, should this court grant the defendants' request for a remand, it would enter an order dismissing Todd's remaining claims pursuant to Rule 12(b)(6).

On October 7, 1994, this court granted the defendants' motion for remand to the district court to consider the validity of the qualified immunity defense. On October 17, 1994, the district court dismissed Todd's remaining claims in their entirety on grounds of qualified immunity. On October 21, 1994, Todd filed a timely appeal to this court.

## II.  ANALYSIS

Todd's only point of error on appeal is that the district court erred in applying a "heightened pleading" standard in dismissing his equal protection and § 1981 claims.[7] Specifically, Todd contends that this heightened pleading standard is inconsistent with the "notice pleading" set forth in Rules 8(a)(2)[8] and 9(b)[9] of the Federal Rules of Civil Procedure.

In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 113 S. Ct. 1160 (1993), the Supreme Court concluded that the heightened pleading requirement we established in Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985), could not be

---

[7] Racial discrimination claims brought under § 1981 are subject to the defense of qualified immunity. See Saunders v. Bush, 15 F.3d 64 (5th Cir. 1994). Furthermore, the heightened pleading standard enunciated in Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985), also applies to all civil rights actions where the defense of qualified immunity is asserted, including § 1981 claims. Wicks v. Mississippi State Employment Svcs., 41 F.3d 991, 996 n.21 (5th Cir. 1995).

[8] Rule 8(a) states that:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .

FED. R. CIV. P. 8(a)(2).

[9] Rule 9(b) states in relevant part:

**(b)  Fraud, Mistake, Condition of the Mind.**  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . .

FED. R. CIV. P. 9(b).

6

applied in a § 1983 suit against a municipality; however, the Court explicitly reserved the question whether a heightened pleading requirement may survive in cases against individual public officials who assert the defense of qualified immunity. Leatherman, 113 S. Ct. at 1162.  In our recent en banc decision in Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995) (en banc), we revisited Elliott and held that "we stand by our insistence that complaints plead more than conclusions, and that a plaintiff can, at the pleading stage, be required to engage the affirmative defense of qualified immunity when invoked.  However, we will no longer insist that plaintiff fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."  Schultea, 47 F.3d at 1430.

Thus, instead of requiring that the plaintiff provide greater specificity in the *complaint* in anticipation of a qualified immunity defense, we held that the district court should abide by the following two-step procedure:

> First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone.  Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity.  Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist. . . .

Id. at 1433-34.  In the case at hand, the district court dismissed Todd's claims pursuant to Rule 12(b)(6) on grounds that Todd had failed to provide sufficient specificity in his

7

complaint and amended complaint to overcome the defense of qualified immunity. Because the district court's dismissal occurred on October 17, 1994-- almost five months prior to our decision in Schultea-- it could not have anticipated the two-step process we outlined in Schultea. Nonetheless, Schultea makes it clear that this two-step process-- requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7-- is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.

In the case at bar, Todd's amended complaint specifically outlines the series of events that led to his injury, and it attaches a copy of the offending memorandum.[10] It is deficient in specifying the degree of personal involvement of each of the defendants. The motion to dismiss filed by the defendants is accompanied by affidavits from twelve of the seventeen named defendants. The district court's order, however, appears to be based not upon a review of the affidavits but upon the factual insufficiency of Todd's pleadings. Therefore, we construe the district court's order as a dismissal under Rule 12(b)(6), rather than a grant of summary judgment. Todd was not provided an opportunity to respond to the defendants' assertion of qualified immunity prior to the district court's dismissal of his suit. It is possible that, had Todd been given the opportunity to reply to

---

[10] The government's brief concedes that "the memorandum of which Todd complains was racially inflammatory and denigrating to African-Americans . . . ."

the qualified immunity defense, his complaint, as augmented by his reply, would have survived the motion to dismiss. The district court's abrupt change of mind pretermitted Todd's suit, without giving him an opportunity to reply, a result that Schultea's two-step process was intended to avoid. Accordingly, we think Schultea requires that Todd be given an opportunity to reply with greater specificity to the defendants' qualified immunity defense pursuant to Rule 7.

### III.   CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Todd's equal protection and § 1981 claims pursuant to Rule 12(b)(6) is hereby REVERSED and the case is REMANDED to the district court with instructions to provide Todd an opportunity to file a reply addressing the merits of the defendants' asserted qualified immunity defense.